J-S33014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.D.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1177 EDA 2025 |

Appeal from the Decree Entered April 10, 2025
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0000347-2024

BEFORE: BOWES, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 12, 2025**

N.B. ("Mother") appeals the April 10, 2025 decree that granted a petition filed by the Philadelphia Department of Human Services (hereinafter, "DHS" or "the Agency") and involuntarily terminated her parental rights to her biological daughter, J.D.B., who was born in July 2013.[1] Mother's attorney, Meredith S. Rogers, Esquire, has also filed a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967).[2] After careful consideration, we hereby grant counsel's request to withdraw and affirm the underlying decree.

_____

[1] In separate decrees filed on May 28, 2025, the trial court also terminated the parental rights of J.D.B.'s putative father, J.W. ("Father"), and the parental rights of any unknown father that may exist. No appeals were filed from those decrees.

[2] The **Anders** framework applies to termination of parental rights appeals. **See In re Adoption of B.G.S.**, 240 A.3d 658, 661 (Pa.Super. 2020).

We gather the relevant factual and procedural history of this matter from the certified record. DHS first became involved with this family in July 2013, when it received a General Protective Services ("GPS") report indicating that Mother and J.D.B. tested positive for phencyclidine ("PCP") at the time of J.D.B.'s birth. Although J.D.B. was initially removed, she was returned to Father's custody in August 2013. In May 2014, however, Father was charged with third-degree murder. He was subsequently convicted in October 2015 and sentenced to twenty to forty years of incarceration.

Consequently, custody of J.D.B. reverted to Mother. In July 2015, the Agency received a Child Protective Services ("CPS") report indicating that J.D.B., then approximately two years old, had been found unattended on a Philadelphia street corner, with Mother unconscious nearby. While the Agency initially became re-engaged with the family, the matter was closed in September 2015 after J.D.B.'s maternal grandmother agreed to begin caring for the child at her home in Delaware. At some point between September 2015 and August 2018, however, J.D.B. returned to Mother's custody in Philadelphia.

In December 2019, the Agency became involved with the family, again, due to Mother's substance abuse and the birth of J.D.B.'s sister, A.B. The Agency also identified mental health concerns as Mother was suffering from post-traumatic stress disorder ("PTSD") and bipolar disorder. Thereafter,

Mother, J.D.B., and A.B. began living with the children's maternal aunt under a DHS safety plan.

In June 2021, the Agency received a GPS report that police had responded to a 911 call wherein Mother was discovered inebriated and unconscious in a motor vehicle with the children. After Mother was revived with Narcan, she refused further medical attention. Although both children were found to be healthy and uninjured, they presented with poor hygiene.

On July 2, 2021, the Agency obtained emergency protective custody of, *inter alia*, J.D.B., who was placed in foster care. **See** N.T., 4/10/25, at 29. On December 6, 2021, the court adjudicated J.D.B. dependent and established her permanency goal as reunification.[3] J.D.B. was approximately eight years old at the time of removal and placement. Sometime in 2022, J.D.B. was moved to a pre-adoptive placement with her foster mother ("Foster Mother"), where she has remained since that time. **Id**. 15.

In furtherance of reunification, Mother was ordered to, *inter alia*, participate in mental health and drug and alcohol treatment, attend consistent but random drug screens, and participate in supervised visits with J.D.B. at the child's discretion. **See** N.T., 4/10/25, at 21-22. These services were administered and overseen by a Community Umbrella Agency ("CUA").

_____

[3] On August 15, 2024, the trial court established adoption as J.D.B.'s concurrent permanency goal. Mother did not appeal that determination.

The court held regular permanency review hearings between March 2022 and August 2024. Between March and June of 2022, the court found Mother's compliance and progress with respect to these objectives to be substantial. Thereafter, however, Mother's cooperation with her court-ordered services steadily regressed. Between October 2022 and August 2024, the court largely concluded that Mother's compliance and progress was either minimal or nonexistent. During this same period, Mother tested positive for PCP and marijuana and failed to appear for court-ordered drug screens.

On September 9, 2024, the Agency filed a petition seeking to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[4] The trial court held a termination hearing

---

[4] Our Supreme Court has concluded that Pennsylvania appellate courts should engage in "limited *sua sponte* review" to ensure that children have been afforded their statutory right to legal counsel when facing the potential termination of their parents' parental rights. *In re Adoption of K.M.G.*, 240 A.3d 1218, 1238 (Pa. 2020). Although there is not order formally appointing counsel for J.D.B. pursuant to 23 Pa.C.S. § 2313(a) (requiring that counsel be "appointed" to represent a child's legal interests), there is no question that J.D.B. was represented in these proceedings by both legal interest counsel, Amanda Green, Esquire, and a separate attorney who acted as her guardian *ad litem*, John Capaldi, Esquire. *See* N.T., 4/10/25, at 6-7. These circumstances do not rise to the level of structural error. Specifically, our Supreme Court has "declined to elevate form over substance" in analogous circumstances wherein a child "received appropriate legal representation despite the absence of an appointment order." *Interest of A.C.F.*, 341 A.3d 106, 2025 WL 1420365, at *2 n.3 (Pa.Super. 2025) (non-precedential decision) (citing *In re T.S.*, 192 A.3d 1080, 1090 n.19 (Pa. 2018)); *see also Commonwealth v. D'Amato*, 856 A.2d 806, 822 (Pa. 2004)). In the future, however, we exhort the trial court to follow the best practices identified by our precedent and ensure that formal orders appointing counsel for children in termination cases are appropriately filed of record.

on April 10, 2025, at which point in time J.D.B. was eleven years old. Therein, the Agency introduced the records from her dependency proceedings and adduced testimony from CUA case manager Lisa Crump. Mother was present and testified on her own behalf. She was represented by Attorney Rogers.

At the hearing's conclusion, the court indicated its intent to involuntarily terminate Mother's parental rights and placed its rationale on the record. **See** N.T., 4/10/25, at 59-65. The same day, it filed a decree that granted the Agency's petition and terminated Mother's parental rights to J.D.B.

On May 9, 2025, Mother timely filed a notice of appeal along with a concise statement of errors pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed a statement in lieu of an opinion pursuant to Rule 1925(a)(2)(ii), which referred to and explicitly adopted its prior, on-the-record reasoning.

As noted, Attorney Rogers has filed a brief pursuant to **Anders**, wherein she sets forth her conclusion that Mother's appeal is frivolous and seeks our leave to withdraw from the case.[5] We must begin our review of this matter

---

[5] In lieu of filing a separate application to withdraw, Attorney Rogers has attached an application to withdraw as an exhibit to her **Anders** brief. **See Anders** brief at 17. In this context, "it is preferred that counsel file a separate petition to withdraw." **Commonwealth v. Smith**, 700 A.2d 1301, 1303 n.7 (Pa.Super. 1997). Nonetheless, this Court has found it to be "satisfactory" when counsel moves to withdraw within an **Anders** brief and does not submit a distinct application. **Id**.; **see also Commonwealth v. Karagiannis**, 323 A.3d 220, 2024 WL 3067209, at *4 n.2 (Pa.Super. 2024) (non-precedential
*(Footnote Continued Next Page)*

by assessing counsel's application to withdraw. *See In re Adoption of B.G.S.*, 240 A.3d 658, 661 (Pa.Super. 2020) ("When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.").

In order to successfully withdraw pursuant to *Anders*, counsel must: (1) petition the court for leave to withdraw and aver that, after making a conscientious examination of the record, he has determined that an appeal would be frivolous; (2) furnish a copy of the *Anders* brief to the appellant; and (3) advise the appellant that they have the right to retain private counsel or bring additional arguments to the court's attention. *Id*. To confirm client notification has occurred, counsel must provide a copy of the letter advising the appellant of her rights in conformity with *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa.Super. 2005). *See B.G.S.*, 240 A.3d at 661.

Attorney Rogers has submitted a brief pursuant to *Anders* averring that Mother's appeal is frivolous. Attached to counsel's brief is a *Millisock* letter dated July 13, 2025, which properly advised Mother of her right to retain alternative private representation or raise supplemental arguments on her own. *See Anders* brief at Appendix A. This letter also provided Mother with

---

decision) (same). Thus, we find no error in the instant case that would preclude us from addressing Attorney Rogers's request to withdraw.

Additionally, we note that both J.D.B.'s guardian *ad litem* and the Agency opted not to submit briefs in light of the *Anders* filing.

a copy of counsel's *Anders* brief. *Id*. Thus, the requirements of procedure and notice pursuant to *Millisock* have been satisfied.

Our caselaw sets forth substantive requirements for *Anders* briefs, which must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes would arguably support the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. *See B.G.S.*, 240 A.3d at 661 (citing *Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009)). A fully compliant *Anders* brief, therefore, should "articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous." *Id*.

The *Anders* brief submitted by Attorney Rogers provides a thorough summary of the factual and procedural history of this matter, which includes citations to the certified record and a recitation of the relevant events in these proceedings. *See Anders* brief at 5-15. Furthermore, the brief also contains a sufficient discussion of governing Pennsylvania law concerning the involuntary termination of parental rights. *Id*. In her discussion of the grounds for termination relied upon by the trial court pursuant to § 2511(a)(1), (2), (5), (8), and (b), Attorney Rogers explains her reasons for concluding that Mother's potential grounds for appeal are wholly frivolous based upon the well-supported findings of the trial court. *Id*.

- 7 -

Based upon the foregoing, we conclude that Attorney Rogers has complied with the technical and procedural requirements attendant to **Anders**. Accordingly, we will proceed to review the merits of the issues outlined in her brief while conducting "an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **B.G.S.**, 240 A.3d at 662 (quoting **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa.Super. 2015)). In the brief, counsel identifies three potential issues to support an appeal, namely, whether the trial court abused its discretion in terminating Mother's parental rights: (1) pursuant to 23 Pa.C.S. § 2511(a); (2) pursuant to § 2511(b); and (3) by relying upon incompetent evidence. **See Anders** brief at 4.

Our standard of review in this context is well-established:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

> In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa.Super. 2022) (cleaned up).

The involuntary termination of parental rights is governed by § 2511 of the Adoption Act, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination. *Id.* at 830; *see also* 23 Pa.C.S. § 2511(a)(1)-(11). If the trial court determines the petitioner has established grounds for termination under one of these subsections by "clear and convincing evidence," the court then assesses the petition pursuant to § 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). We need only agree with the court's determination as to any one subsection of § 2511(a), in addition to § 2511(b), in order to affirm. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

We will review the decree involuntarily terminating Mother's parental rights pursuant to § 2511(a)(2) and (b), which provide as follows:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

- 9 -

. . . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

In order to satisfy § 2511(a)(2), the petitioning party must establish: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." **In re Adoption of A.H.**, 247 A.3d 439, 443 (Pa.Super. 2021). Grounds for termination pursuant to § 2511(a)(2) "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." **Id**. (citing **In re Z.P.**, 994 A.2d 1108, 1117 (Pa.Super. 2010)). In sum,

"[p]arents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." ***A.H.***, 247 A.3d at 443.

The trial court found that Mother's substance abuse and mental health troubles constituted an ongoing incapacity that caused J.D.B. to be without essential parental care, control, and subsistence. ***See*** N.T., 4/10/25, at 62. Furthermore, the court concluded Mother was unable to remedy these incapacities based upon her failure to maintain and achieve progress despite four years of services. ***Id***.

Our review indicates there is sufficient support for these findings in the certified record. As noted above, the Agency largely relied upon the testimony of Ms. Crump, who was assigned to the case in June 2024, but also testified concerning Mother's history of involvement with the Agency based upon her review of the case files. ***Id***. at 14-15. Ms. Crump explained that Mother has struggled with PCP abuse throughout the lifetime of this case. ***Id***. at 23-24. Ms. Crump averred that Mother has never successfully provided a negative drug screen. ***Id***. at 24, 33. Indeed, Ms. Crump confirmed that Mother had tested positive for PCP and marijuana as recently as May 2024. ***Id***. at 47. Ms. Crump also explained that Mother had failed to consistently participate in a dual diagnosis treatment program to address her mental health and substance abuse issues. ***Id***. at 24, 33, 38-39.

Mother's own testimony further confirmed that she continues to suffer from substance abuse. ***Id***. at 55. Her averments revealed that she has

struggled with PCP addiction since she first began using it at approximately eleven years old. *Id*. at 49, 54. Furthermore, Mother conceded that she had not completed substance abuse or mental health treatment. *Id*. at 54-55. Despite acknowledging her abuse of PCP, Mother denied that she needed treatment. *Id*. at 54 ("I already know how not to get high."). Mother also refused to acknowledge that she suffers from mental health diagnoses. *Id*. at 55 ("I don't suffer from mental health[.]").

Based upon this testimony, we observe no abuse of discretion or error of law in the trial court's findings with respect to § 2511(a)(2). There is simply no dispute that Mother suffers from a crippling addiction to PCP and unaddressed mental health issues that have caused J.D.B. to be without essential parental care and control for many years. It is equally clear that Mother is unable, or unwilling, to take the steps necessary to remedy this incapacity as evinced by her lack of insight and progress despite four years of services. Thus, termination was warranted pursuant to § 2511(a)(2).

Since the trial court correctly concluded that adequate grounds for termination existed pursuant to at least one subsection of § 2511(a), we now turn to a review of the court's findings pursuant to § 2511(b), which gives "primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b); *see also T.S.M.*, 71 A.3d at 267. We also remain mindful that "the determination of the child's particular developmental, physical, and emotional needs and welfare must be made on

a case-by-case basis," with an eye towards "each child's specific needs." ***Interest of K.T.***, 296 A.3d 1085, 1105-06 (Pa. 2023). We emphasize that this inquiry is neither formulaic, nor mechanical. ***Id***.

Our review must include consideration of the bond between the parent and the child. ***See In re E.M.***, 620 A.2d 481, 485 (Pa. 1993). Our Supreme Court has explained, however, that "only a necessary and beneficial" parental bond should be maintained. ***K.T.***, 296 A.3d at 1009. A bond is considered to be "necessary and beneficial" if its severance would cause extreme emotional consequences or significant, irreparable harm. ***Id***. at 1109-10. The extent of the "bond-effect analysis necessarily depends on the circumstances of the particular case." ***In re Adoption of J.M.***, 991 A.2d 321, 324 (Pa.Super. 2010) (cleaned up). Therefore, it is "within the discretion of the [trial] court to prioritize the safety and security" of children "over their bonds with their parents." ***M.E.***, 283 A.3d at 839 (cleaned up). Courts should also consider "whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." ***K.T.***, 296 A.3d at 1106. Finally, we note that a child's "emotional needs and welfare include intangibles, such as love, comfort, security, and stability." ***Id***.

The trial court concluded that the termination of Mother's parental rights would best serve the developmental, physical and emotional needs and welfare of J.D.B. ***See*** N.T., 4/10/25, at 64-65. Specifically, it determined that any beneficial relationship that existed between J.D.B. and Mother had

- 13 -

"diminished" at the time of the hearing. *Id*. at 65. By contrast, the court concluded that J.D.B. was closely bonded with Foster Mother, who has been caring for her since 2022. *Id*. Thus, it concluded that termination was also appropriate pursuant to § 2511(b).

These findings are also adequately supported by the certified record. There has been limited contact between Mother and J.D.B. following her removal. We gather from the record that, initially, Mother regularly participated in supervised interactions with J.D.B. *Id*. at 64. For at least one year prior to these proceedings, however, J.D.B. began refusing to participate in visits with Mother. *Id*. at 22, 64. Specifically, Ms. Crump testified that no supervised visits had occurred between Mother and J.D.B. for a "substantial" period of time due to the child declining to participate. *Id*. at 32, 37-38.

Assuming, *arguendo*, that some level of connection still exists between Mother and J.D.B., J.D.B.'s parental bond lies with Foster Mother who has been caring for her for the last three years. Ms. Crump testified that Foster Mother is the individual whom J.D.B. looks to for support, comfort, and care. *Id*. at 28-31. Overall, Ms. Crump opined that J.D.B. was "well bonded" with Foster Mother and the other children in her home. *Id*. at 28, 32. Ms. Crump noted that the relationship between J.D.B. and Foster Mother is "a loving, proper parent/child relationship." *Id*. at 36. Ms. Crump confirmed that Foster Mother intends to adopt J.D.B. and that J.D.B. wishes to remain with Foster Mother. *Id*. at 29, 32.

Our review indicates that the evidence of record further reflected that J.D.B. has been objectively thriving in Foster Mother's care. Ms. Crump testified that J.D.B. was recently successfully discharged from "individual therapy." *Id*. at 16. Ms. Crump also averred that J.D.B. is doing well in school and is up to date on her medical, dental, and vision. *Id*. at 16-17.

In sum, Ms. Crump opined that terminating Mother's rights would not cause irreparable harm to J.D.B. *Id*. at 36. To the contrary, she testified that terminating Mother's parental rights would be in J.D.B.'s best interests since it would allow her to be adopted by Foster Mother. *Id*. at 35.

Based upon the foregoing, our review indicates that the trial court's findings pursuant to § 2511(b) are well-supported by Ms. Crump's testimony. Thus, we must accept them. *See M.E.*, 283 A.3d at 829. Furthermore, our review confirms that the trial court's findings pursuant to § 2511(a)(2) and (b) are supported by competent evidence. Accordingly, we agree with counsel that any challenge to the termination ruling would be frivolous.

Our independent review indicates that the record does not contain any non-frivolous issues overlooked by Attorney Rogers. Therefore, we grant counsel's request to withdraw pursuant to *Anders* and affirm the underlying termination decree.

Request to withdraw granted. Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/12/2025